### JOHN H. HARDING *vs.* ELLA W. BROWN.

Suffolk. January 8, 1917. — May 22, 1917.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Guardian. Parent and Child. Probate Court*, Jurisdiction, Appeal.

A woman, not related to a child eight years of age, filed in the Probate Court for the county wherein the child lived with her mother a petition, which was assented to by the mother and which contained an allegation that the father, who lived in another State, was unfit to be the child's guardian and a prayer that the petitioner be appointed such guardian with custody of the child. A citation was issued to and was received by the father, which contained no mention of the allegation of the father's unfitness. The mother died before the return day of the citation. There was no appearance by or on behalf of the father and the Probate Court granted the petition, the decree containing the statement that it appeared that the father of the child "has had due notice, according to the order of the court" and that the mother "has assented thereto." On an appeal from a decree dismissing a petition by the father for revocation of the decree of appointment, it was *held,* that the Probate Court under R. L. c. 145, § 4, as amended by Sts. 1902, c. 474; 1904, c. 163, had authority to order the issuance of the citation above described and to adjudge the notice thereby given to the father to be sufficient, the fact that the citation contained no reference to the allegation of the father's unfitness not making it invalid.

It further appeared that the citation above described was directed to "John J. H. one of the next of kin" of the minor, instead of to "John H. H." as the minor's father. *Held,* that such misnomer did not deprive the court of jurisdiction, the object of the citation having been accomplished when the notice was received by the father in time for him to appear and contest.

The strict rules of the common law as to pleading and practice do not obtain in the procedure of courts of probate.

The jurisdiction of the Probate Court to make a decree appointing, as guardian of a child under fourteen years of age with custody of the person, one not related to the child, where the mother assents to the appointment and the father has proper notice of the pendency of the petition, is not affected by the fact that the father, upon receiving the notice, gave it to an attorney with instructions to contest the appointment and that the attorney failed to do so.

Reasons for an appeal from a decree of the Probate Court dismissing a petition

for the revocation of a decree of guardianship on the ground of lack of juris-
diction, which are based on issues not raised by the allegations of the petition,
cannot be considered.

It also was *held* that the Probate Court had jurisdiction of the subject matter of
the petition for guardianship above described and of the parties, and that,
the allegations of the petition having been found to have been true, the decree
could not be set aside on the petition of the father for its revocation, although,
if the father had appeared to contest its allowance, the result might have been
different.

The mere fact, that the guardian, with custody of the person, of a girl under four-
teen years of age, whose mother is dead and whose father is living, brings up the
child as a member of the Baptist Church contrary to the wishes of the father,
who is a member of the Roman Catholic Church, where it appears that the
mother when living and the guardian both attended the Baptist Church and
it appears reasonably certain that the child's welfare and happiness do not
require a present change of guardianship and it does not appear that the child's
conscience ever has been subjected to constraint, does not require as a matter
of law that a petition by the father for the removal of the guardian be granted.

It *was not intimated,* however, that the provision in the decree of guardianship
giving control of the child to the guardian might not be reviewed in the light
of subsequent events if the welfare and happiness of the child required it.

PETITION, filed in the Probate Court for the county of Suffolk
on January 15, 1916, and afterwards amended, by the father of
Virginia M. (otherwise known as Virginia R.) Harding, a minor,
alleging that Ella W. Brown had filed a petition for her appoint-
ment as guardian of the minor on February 24, 1915, in which she
alleged that the father was an unfit person to be guardian of his
daughter; that a copy of the citation on that petition had been
received by the father in Philadelphia in the State of Pennsylvania
on May 6, 1915, but that the citation contained no allegation
that the father was an unfit person to be guardian of his child;
that the mother of the minor, Loma R. Harding, had died in
Boston on April 1, 1915, but that the father had had no knowledge
of that fact until about December 7, 1915; that upon receiving the
citation the father gave instructions to his attorney in Philadelphia
to oppose the allowance of the petition; that by a decree dated
May 13, 1915, Ella W. Brown was appointed guardian of the
person and estate of the minor with custody of her person, and
that the father was not informed of that appointment until on
or about December 20, 1915; that the father was not an unfit
person to be the guardian of his child, being sober and industrious
and fully competent to have the custody of her and to provide for
her education and maintenance, and that Ella W. Brown was an

unsuitable person for the discharge of that trust. The prayer of the petition was "that the said Ella W. Brown be removed from office as guardian and that the decree granting the custody of the said Virginia M. Harding to the said Ella W. Brown be revoked, and for such further orders and decrees as to" the court should "seem proper."

It appeared that the petition of Ella W. Brown for guardianship of the minor, filed in the Probate Court on February 24, 1915, alleged that the minor was born on June 29, 1907, in Goffstown, in the State of New Hampshire, and was the child of "John J. Harding, now of Balla, Pa., and Loma R. Harding, his wife," and that the father was unfit to be the child's guardian. Indorsed upon the petition was the assent of the mother, Loma R. Harding. The citation upon the petition was addressed to "John J. Harding, one of the next of kin of Virginia R. Harding," and contained no statement that one allegation in the petition was that the father was unfit to be guardian of his child. The decree appointing Ella W. Brown as guardian of the person and estate of the minor was dated May 13, 1915, and recited that it appeared "that the father of said minor has had due notice, according to the order of the court, and that the mother has assented thereto."

The petition of the father for removal of the guardian and revocation of the decree appointing her was heard in the Probate Court by *Grant,* J., and was dismissed. The father appealed, setting forth the following objections as grounds of appeal:

"1. That John H. Harding, the father of Virginia M. Harding, is not an unfit person to be the guardian and to have the custody of his minor child.

"2. That said John H. Harding is a suitable person to be the guardian and have the custody of his said minor child.

"3. That the present guardian, Ella W. Brown, is an unsuitable person to be the guardian and have the custody of said minor child.

"4. That the appointment of Ella W. Brown to be the guardian and have the custody of said minor child was obtained by misrepresentation and fraud.

"5. That, at the time the said Ella W. Brown was appointed guardian and ordered to have the custody of said minor child, the mother of said minor, Loma R. Harding, who had previously assented to the petition for the appointment of said Ella W.

Brown as guardian and to have the custody of said minor child, was deceased.

"6. That the said Ella W. Brown was appointed guardian of said minor without the consent in writing of the said father, the surviving parent of said minor.

"7. That the said Ella W. Brown was appointed guardian without service of proper and sufficient notice upon the said surviving parent.

"8. That the decree of the Probate Court giving the custody of said minor child to the said guardian, Ella W. Brown, was entered without a hearing, without the consent in writing of the father, the surviving parent of said minor, and without service of proper and sufficient notice upon the surviving parent.

"9. That the Probate Court had no jurisdiction in the matter of the appointment of the said Ella W. Brown to be the guardian and to have the custody of the said minor child.

"10. That the said minor had not her domicil in, and was not a resident of, Boston in the county of Suffolk at the time of the appointment of the said guardian, Ella W. Brown.

"11. That the residence and domicil of said minor child is now, and at the time of the appointment of said guardian and for a long time prior thereto was, the residence and domicil of her surviving parent, her father, John H. Harding, to wit, the city of Philadelphia in the state of Pennsylvania.

"12. That said Ella W. Brown is of a different religious faith from that of the said John H. Harding, father of said child, and that the said Ella W. Brown is bringing up the said minor child, without the consent of the father and contrary to his wishes, in a religion other than that in which said minor child was born and baptized, the Roman Catholic religion, the religion of the said John H. Harding, father of said minor child; and said guardian is educating the said minor child in a manner contrary to the wishes of her father.

"13. That the decree of the Probate Court dismissing the petition of the said John H. Harding that the said Ella W. Brown be removed from office as guardian and that the decree granting the custody of the said Virginia M. Harding to the said Ella W. Brown be revoked is against the law and the evidence, and should be reversed."

The petition was heard on appeal by *De Courcy, J.,* who found the following facts and reported the case to the full court for determination:

"1. It is the first contention of the petitioner that the decree appointing Ella W. Brown guardian is not valid as against him, at least so far as affects the custody of his daughter, because the Probate Court had no jurisdiction to award said custody, and for other reasons. The facts bearing on this contention are as follows: The petition of Ella W. Brown (who was mother by adoption of Loma R. Harding) was dated February 24, 1915. At that time, and for three years before, Loma R. Harding and her daughter Virginia and Mrs. Brown were living in Boston, and Mr. Harding in Philadelphia. Mrs. Harding, who assented to the petition, was seriously ill at the time, and died on April 1, 1915. The petition asked for the custody of the minor and alleged that the father was unfit for this purpose. The only notice sent to the father was a copy of the citation sent by registered mail, and received May 6, or one week before the return day of the petition; and no reference appears in said citation to the allegation of the father's unfitness. On the return day, and date of the decree, May 13, 1915, Loma R. Harding, the mother of the minor, was deceased some six weeks, and it does not appear that this fact was brought to the attention of the Probate Court. The decree recites that 'the petitioner be appointed guardian of the person and estate of said minor.' . . . When the copy of the citation was received by this petitioner in Pennsylvania, he had not been informed that his wife was dead, and did not know that the petition alleged his unfitness to have the custody of his child. He consulted counsel ⸰ in Pennsylvania, but was not represented in the Probate Court. Some time after the date of the decree, namely, May 21, 1915, his counsel obtained for him a copy of the petition. By request of the parties I report for the consideration of the full court the question whether, on these facts, the Probate Court had jurisdiction as against this petitioner to award to Ella W. Brown the custody of his minor child, and if so, whether the decree legally deprived the father of the custody of his child and awarded such custody to Mrs. Brown. If not, the decree of the Probate Court on the present petition is to be reversed, and a decree ordered in favor of the petitioner.

"2. If the awarding to Ella W. Brown of the custody of the minor Virginia R. Harding was valid and binding as against him, the petitioner, John H. Harding, further alleges, by an amendment to his petition,.that Ella W. Brown should be removed from guardianship with custody, on the ground that she is an unsuitable person for the discharge of said trust. The material facts bearing on this issue are as follows: John H. Harding and Loma R. Harding were married in Philadelphia in June, 1906, and lived there together as husband and wife until June, 1907; when, following. some trouble between them, Mrs. Harding left Philadelphia and went to Goffstown, N. H., where the child, Virginia, was born, on June 29. Her husband later came to Goffstown and spent some days with his wife and child. In July, 1907, Mrs. Harding returned to Philadelphia and the couple took up their home there. In July, 1908, they came to Boston, and there remained until the fall of 1911, when Mr. Harding, who was not in good health, returned to Philadelphia, with the assent of his wife. He has remained there since that time. In July, 1909, Mrs. Brown, the respondent, came to live with the married couple. She had deserted her husband in 1904, and earned her living as a domestic. After Mr. Harding went to Philadelphia, his wife and Mrs. Brown and the child remained in Boston, occupying an apartment until April, 1912, when they went to live at the rooms of the Young Women's Christian Association; Mrs. Harding as a roomer and boarder, and Mrs. Brown as cook for the institution. There they remained with the minor — Mrs. Harding until the time of her death in April, 1915, and Mrs. Brown and the minor up to the present time.

"Mrs. Brown visited the petitioner in Philadelphia, taking the child with her, in the summer of 1912, and remained there from March to September. In 1913, and again in 1914, the petitioner's wife, Loma R. Harding, went to Philadelphia with the minor, but refused to remain there with her husband. Mr. Harding did not come to Boston from 1911 until December, 1915, when he learned of his wife's death. While in Boston Mrs. Harding worked for a drug company, and, later, as a stenographer, with wages of $7 and finally of $10 per week; and Mrs. Brown as cook received at first $6 and finally $10 per week. The expense of the mother for board and room was $3 and that of the child was $2 per week.

"I find that Virginia, while living at the rooms of the association, has been well provided for, and that, both during the mother's lifetime and since, the respondent has given to the child all the attention she was able to give, and has a motherly affection for her. While it is a fact that she is a somewhat elderly woman for her years (sixty-three years) and is busily engaged at work from an early hour in the morning until after six in the evening, the officers and other inmates of the house, and especially the general secretary, Miss Frances L. Bennett, have devoted much care and attention to the minor, and she has been well cared for. It appeared at the hearing that there is filed in the Probate Court a, petition by Miss Bennett for the adoption of Virginia, and change of name to Virginia Loma Bennett.

"If material, the minor is being brought up as a member of the Baptist Church, contrary to the wishes (expressed in June, 1916) of the petitioner, who is a member of the Roman Catholic Church. Mrs. Harding and Mrs. Brown both attended the Baptist Church.

"I do not find the allegation of Mrs. Brown's unsuitableness to be proved, unless the foregoing facts establish it as matter of law.

"3. No appeal was taken from the decree of the Probate Court on the original petition of Ella W. Brown for the guardianship with custody of the minor Virginia R. Harding. If the question of custody is now open to the petitioner, I find the following facts in addition to those already stated: As bearing on the fitness of the father, John H. Harding, to have the custody of his child, there was considerable evidence of the relations between him and his wife during her lifetime, chiefly in the form of statements made by her to her associates in Boston. During the years of their separation, from the fall of 1911 to April, 1915, the relations between Mr. and Mrs. Harding grew more and more strained. Mrs. Harding was a highly nervous woman, active and ambitious. Mr. Harding was lame, physically below par, of limited schooling, and had not succeeded in business. Her surroundings in Boston were more attractive to her, intellectually and socially, than those of her husband in Philadelphia. At the last of her life she frequently complained to her acquaintances about his failure to send her money, and expressed a desire that her child should be committed to the custody of Mrs. Brown, in the event of her

own death. During this period of separation Mrs. Harding and Mrs. Brown were in receipt of a fair income, and I do not find that they or the child were in actual need, due mainly to their earnings. After April, 1912, they lived comfortably at the association rooms. Mr. Harding did not send much money and did not have it to send. The few letters in existence, and the almost uncontradicted testimony of disinterested witnesses, satisfies me, however, that at no time was Mr. Harding addicted to the use of intoxicating liquor, or guilty of physical cruelty toward his wife.

"As to the fitness of the father to have the custody of the child at the present time, I find, on disinterested evidence, that he is an industrious and sober man, with a good reputation in the neighborhood where he has long lived; that since about a year ago he has become established in a substantial business, and has accumulated some machinery and money; that his home in Philadelphia, where he lives with his unmarried sister and brother (both of mature years), is a comfortable and well-furnished one, in a good neighborhood; that he has bought a piano for the use of his child and made arrangements to have her educated at a good boarding school. In short, I do not find that he is an unfit person to have the custody of his child.

"I find that the welfare of Virginia will be sought and secured whether her father, John Harding, or Mrs. Ella W. Brown be entrusted with her custody. If the question of the custody of the minor is now open on this petition, and these facts warrant the court in terminating the right of Mrs. Brown to the custody of the minor, then the decree of the Probate Court dismissing the petition is to be reversed."

The case was argued at the bar in January, 1917, before *Rugg,* C. J., *Loring, Braley,* & *Carroll,* JJ., and afterwards was submitted on briefs to all the justices except *De Courcy,* J.

*E. A. McLaughlin,* for the petitioner.

*J. H. Morson,* for the respondent.

BRALEY, J. The petition as amended asks that the decree appointing the respondent guardian of Virginia M. Harding, minor daughter of the petitioner and Loma R. Harding, his wife now deceased, be revoked, and, in the alternative, that she may be removed. By R. L. c. 145, § 1, and § 4 as amended by St. 1902, c. 474, and by

St. 1904, c. 163, the court of probate is given original jurisdiction over the appointment of guardians of minors and of insane persons, and the validity of the decree is attacked on the ground that the citation on the petition contained no allegation "that the father was an unfit person to be guardian of his . . . daughter." Before the St. of 1902, c. 474, notice was not essential to the validity of the appointment of a guardian for a minor under the age of fourteen years. *Gibson, appellant,* 154 Mass. 378. But, the statute having provided that if the parents or surviving parent consented the court might order that the guardian should have the custody of his ward, and "may so order if upon a hearing and after such notice to the parents or surviving parent as it may order it finds one of them unfit therefor and the other files in such court his or her consent in writing to such order," and the petition for guardianship, to which the mother who was then living consented, having alleged the father's unfitness, it became necessary before jurisdiction could be obtained to give notice to him of the proceedings so that he could appear and contest the allegation. The form and mode of service are left by the statute to the discretion of the court, and the single justice found that no rule as to the form had ever been submitted to and approved by this court under R. L. c. 162, § 29. But, however desirable uniformity in practice of the courts of probate may be, this omission did not do away with the authority conferred. *Osgood* v. *Osgood,* 153 Mass. 38. It was a question for the court to decide, and the fact that the notice contained no reference to the statement of his unfitness did not vitiate its force or effect.

Nor is the misnomer of the father's name and his description as "one of the next of kin" fatal. The strict rules of the common law as to pleading and practice do not obtain in the procedure of our courts of probate. *Codwise* v. *Livermore,* 194 Mass. 445, 447. The object had been accomplished when the notice was received in time for the petitioner to enter an appearance and contest the appointment. *Osgood* v. *Osgood,* 153 Mass. 38.

If the father's former counsel, whom he alleges he retained, failed to follow his instructions to appear and oppose the granting of the petition, this failure affords no ground on which the jurisdiction can be assailed.

We are aware that the reasons of appeal set forth other alleged

errors going to the jurisdiction, but the reasons of appeal are founded on the petition, which having contained no allegations raising these issues, they need not be considered. *Harris* v. *Harris,* 153 Mass. 439, 441. *Cowden* v. *Jacobson,* 165 Mass. 240, 241.

It must therefore be held that the court had jurisdiction of the subject matter and of the parties, and, it being plain from the recitals that the material allegations of the petition were found to be true, the decree cannot be set aside, although if the present petitioner had appeared the result might have been different. R. L. c. 162, §§ 1, 2. *Thompson* v. *Goulding,* 5 Allen, 81, 82. *Clapp* v. *Thaxter,* 7 Gray, 384, 386, 387. *Connors* v. *Cunard Steamship Co. Ltd.* 204 Mass. 310, 322.

But, if the decree must stand, a guardian who becomes "incapable of performing his trust or is unsuitable therefor" may be removed under R. L. c. 145, § 22, and upon his removal another may be appointed in his stead. "The statute does not attempt to enumerate the causes, but gives the judge of probate a broad discretion to include various cases that may arise." *Thayer* v. *Homer,* 11 Met. 104, 110. The findings of the single justice fail to show any attempt by the respondent to alienate the child's affections from her father, and after stating in substance that she has been well and affectionately cared for, he concludes by saying that as matter of fact "I do not find the allegation of Mrs. Brown's unsuitableness to be proved."

It appears, however, and the justice states that "If material, the minor is being brought up as a member of the Baptist Church contrary to the wishes . . . of the petitioner who is a member of the Roman Catholic Church," and it is further found that her mother when living and her guardian "both attended the Baptist Church." But, no appeal having been taken from the decree, of which the petitioner procured a copy in ample time if dissatisfied to have appealed to this court, the question whether the original appointment was suitable has been finally adjudicated. *Clapp* v. *Thaxter,* 7 Gray, 384, 386, 387. It is to be assumed on the record that the parents were equally interested in the spiritual welfare of their child, and if during the mother's life time and since her death the daughter attended the services of the church with which her mother was affiliated, it is not found that the conscience of the minor has ever been subjected to constraint.

It was held in *Dumain* v. *Gwynne,* 10 Allen, 270, 271, that while the father is usually entitled to the custody of his children of tender years, yet the rights of the mother and welfare of the child are to be considered in deciding as to whom custody shall be awarded, and by R. L. c. 145, § 4, as amended by Sts. 1902, c. 474; 1904, c. 163, the rights of the father and mother to custody are declared to be equal. Doubtless in cases of controverted custody due weight should be given to parental relations and desires, but the controlling consideration is the present and future interests of the child. *Stone* v. *Duffy,* 219 Mass. 178, 182. See *DeFerrari* v. *DeFerrari,* 220 Mass. 38; *Tornroos* v. *R. H. White Co.* 220 Mass. 336; R. L. c. 152, § 28; c. 153, § 37; *In re McGrath,* [1893] 1 Ch. 143. The mother's choice was the present guardian, and although the wishes of the petitioner, who is the surviving parent, as to the religious training and environment of his daughter should not be disregarded, we are unable to say on the record that the respondent should be removed where it seems reasonably certain from the facts stated in the report that the ward's welfare and happiness do not at present require the change. *Purinton* v. *Jamrock,* 195 Mass. 187, 199, 200. *Nicholson's appeal,* 20 Penn. St. 50.

We do not intimate that the provision in a decree of guardianship giving the custody of the minor to the guardian although there is a parent or parents living cannot be reviewed in the light of subsequent events if the welfare and happiness of the ward require that that should be done. The petition now before us is not such a petition.

A majority of the court are of opinion that the decree of the court of probate dismissing the petition should be affirmed.

*Ordered accordingly.*