ROSE RICHARDS & another *vs.* LOUDIA M. FORREST & another.

Worcester.    September 22, 1931. — March 29, 1932.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Parent and Child. Guardian,* Of minor. *Evidence,* Letter, Competency. *Words,* "Unfit."

The judge, who heard a petition in a probate court under G. L. c. 201, § 5, by an aunt and uncle of a girl six years of age, in which the petitioners sought appointment as guardians with custody of the child on the ground that the respondents, the parents of the child, were unfit to have such custody, rightly ruled that the burden of proving such unfitness of the parents was upon the petitioners; that in determining that issue the welfare of the minor was the most important consideration; and that the petitioners were not confined to evidence showing moral or physical unfitness of her parents but could introduce evidence bearing upon her present and future welfare.

The judge hearing the petition above described properly admitted in evidence, as a part of a series of transactions and conferences between the petitioners and the respondents concerning the girl, a letter from

her uncle to her father, written when she was two years and eight months of age and after she had been with the petitioners since she was four months of age and reading: "In accordance with our understanding I am setting down in writing our agreement relative to the care and support of your daughter . . . . It is understood that I shall charge you nothing for the support and care of . . . [the girl], provided you do not take her away from us. It is also understood that you shall allow her to remain with us."

G. L. c. 201, § 5, is a valid exercise of legislative power.

From findings by the judge of probate who heard· the petition above described, it appeared that the girl at the age of four months was given by the respondents into the custody of the petitioners by whom she subsequently had been supported at considerable expense; that the petitioners and respondents had had at intervals conferences and arguments concerning the girl; that there was an understanding or agreement between the parties that she was to stay with the petitioners and that no claim for her support was to be made upon the respondents; that at the time of the hearing the same degree of love and affection which usually exists between parents and children existed between the girl, then six years of age, and the petitioners, and, so far as she was concerned, did not exist between her and her natural parents, the respondents; that she wished to remain with the petitioners; that the parents had seven other children, and the petitioners one; that the parents and the petitioners were equally circumstanced financially. The judge further found that both petitioners and parents were of good character and reputation and both had comfortable homes, not far separated from one another: as to those "matters no 'unfitness' was shown." The judge found that the parents were "in a legal sense unfitted to have the custody of" the girl "and that her welfare requires that she be allowed to remain with the petitioners"; and a decree was entered accordingly. The parents appealed. *Held*, that

(1) There was not a purpose common both to the petitioners and to the respondents that there was to be a binding contract as to the child's custody: the finding as to "understanding or agreement" did not go far enough to establish such relinquishment of parental rights by the respondents as to prevent them from asserting opposition to the petition;

(2) The expenditures by the petitioners for the support of the girl were an important but not a decisive factor;

(3) The facts found by the judge did not support his conclusion that the parents were "unfit," in the sense in which that word is used in the statute, to have the custody of the girl, or that her welfare required that she be committed to the custody of the petitioners;

(4) The decree was reversed.

PETITION, filed in the Probate Court for the county of Worcester on April 15, 1931, for appointment as guardians with custody of a child.

The petition was heard in the Probate Court by *F. H.*

*Chamberlain*, J.   Material facts found, rulings made, and a decree awarding custody are described in the opinion. The respondents appealed.

The case was argued at the bar in September, 1931, before *Rugg*, C.J., *Crosby, Wait,* & *Sanderson*, JJ., and afterwards was submitted on briefs to all the then Justices.

*E. W. Baker*, for the respondents.

*G. C. Sweeney*, for the petitioners.

Rugg, C.J.   The petitioners seek appointment as guardians of Arlene E. Forrest, born in November, 1925, minor child of the respondents, and pray to be awarded the custody of her person, it being alleged that the respondents, as parents, are unfit to have such custody, and that the minor has no property.   The petition was filed in April, 1931.   After reciting that the "minor when four months old was by her parents voluntarily placed in the home and custody of the petitioners and has ever since been cared for and supported by them in their home," and that "because of this continual care and custody, the relationship and affection usually existing between parents and children now exists between said minor and the petitioners and does not exist between the minor and her parents," the final decree ordered that the parents, "because of the above mentioned facts are unfitted to have the present custody of said minor and that said petitioners be appointed guardians and have the custody of the person and estate of said minor," first giving a bond, with the further provision that the petitioners allow the minor to visit and receive visits from her parents at all reasonable times.   The respondents appealed.

The trial judge filed a report of facts wherein, in addition to the recitals of the decree, it was found that Mrs. Richards is the aunt of the minor and a sister of her mother.   When the child was placed with the petitioners her mother was ill and required hospital treatment and consequently was unable to care for her family of young children.   During the five years that the minor has been with the petitioners she has been supported entirely by them, her parents not having paid or offered to pay anything toward her support and never having been asked to contribute anything.   Apparently

a frail child, the minor has required more than ordinary care and the petitioners have paid considerable sums for medical and hospital services. One chief contention at the trial was whether or not the respondents had consented to the minor's staying with the petitioners during the five years. It appeared in that connection that the petitioners and respondents had had at intervals conferences and arguments concerning the child. After a summary narration of the evidence, the trial judge found "that there was an understanding or agreement between the parties that Arlene was to stay with the petitioners and that no claim for her support was to be made upon the respondents." He further found that the petitioners in July, 1928, sent to the male respondent a statement in writing relative to the care and support of the minor wherein it was stated: "In accordance with our understanding I am setting down in writing our agreement relative to the care and support of your daughter Arline Forrest. It is understood that I shall charge you nothing for the support and care of Arline, provided you do not take her away from us. It is also understood that you shall allow her to remain with us."; that, by receipt of this statement and from oral statements previously made, the respondents had notice that the petitioners claimed a right to keep the minor; and that if no such understanding existed and the respondents desired the return of their minor child "it is difficult to understand the delay of nearly five years in enforcing their rights." He also found that when the minor was taken from her parents at the age of four months she could not have acquired any deep affection for them; that since that time she had been away from them and lived nearly five years with her aunt under the same close care and attention which parents give to children during that portion of their lives, no contention to the contrary being made; that the natural and inevitable result followed that the minor now looks upon them as her parents; that the same degree of love and affection which usually exists between parents and children now exists between the minor and her foster parents, and so far as the minor is concerned does not exist between the minor and her natural parents.

She wishes to remain with the petitioners. "In my opinion it would be harmful to Arlene and unfair to the Richards to take her from them at present." The respondents have beside the said minor seven children, the eldest being sixteen years of age. The petitioners have one child nineteen years of age. "Mr. Richards and Mr. Forrest receive about the same amount in wages, — $25 to $30 weekly. It would seem, therefore, that financially, the Richards can do more for Arlene than can the Forrests. Whether with or without the express consent of the respondents, the outstanding fact appears to be that a status has been created concerning Arlene, a status" of the creation of which the respondents must have been aware and which they could have terminated and prevented had they so desired. It was found that the character and reputation of both the petitioners and the respondents are good, and that both have comfortable homes. "As to these matters no 'unfitness' was shown." His conclusion is stated in the following words: "From the foregoing facts and circumstances and because of them, I find that the parents are in a legal sense unfitted to have the custody of Arlene and that her welfare requires that she be allowed to remain with the petitioners. However, she should be allowed freely to visit and receive visits from her parents and become better acquainted with them and with her brothers and sisters. At some later period when she becomes more mature and competent to choose her guardian, the matter can be reopened." It did not appear whether the trial judge saw the child.

The stated conclusion was reached upon rulings to the effect that the burden of proving the parents unfit to have the custody of the minor was upon the petitioners; that in determining that issue the welfare of the minor was the most important consideration; and that the petitioners were not confined to evidence showing moral or physical unfitness but could give evidence bearing upon the present and future welfare of the minor. There was no error of law in these rulings.

The evidence is not reported except as embodied in the report of facts filed by the trial judge. His findings of fact

must be accepted as true. *Meyerovitz* v. *Jacobovitz,* 263 Mass. 47, 48. *Knowles* v. *Perkins,* 274 Mass. 27.

There was no error in admitting in evidence the letter signed by the petitioners addressed to the male respondent and already quoted, stating the terms of the agreement between them and the respondents. It was not signed by the respondents. It is not in the form of an agreement to be signed by all parties. Compare *Cyprinski* v. *Phoenix Ins. Co. ante,* 79, 82–83. It constituted a part of a series of transactions and conferences between the parties concerning the child and was entitled to consideration. *Noble* v. *Mead-Morrison Manuf. Co.* 237 Mass. 5, 18. The rule as to exclusion of mere self-serving statements or disconnected letters to the adverse party, illustrated by *Huntress* v. *Hanley,* 195 Mass. 236, 241, *Wilson* v. *Davison,* 242 Mass. 237, 241, and *Leach & Co. Inc.* v. *Peirson,* 275 U. S. 120, 128, is not applicable to evidence of this nature.

This petition is brought under G. L. c. 201, § 5. So far as here material, that section confers jurisdiction upon probate courts to order that the guardian shall have custody and care of the person of a minor if, upon a hearing, the parents are found "unfit to have such custody." This is a valid exercise of legislative power. *Chambers's Case,* 221 Mass. 178, 180. A strong word thus is used in the statute to describe parents from whom may be taken by order of the court the right to custody and care of their child. That word governs the power of the court to award the custody of the child to some one other than her parents. There is no statutory definition of the word "unfit." It therefore must be given its ordinary significance, having due regard to the context. In general, the word means unsuitable, incompetent, or not adapted for a particular use or service. As applied to the relation of rational parents to their child, the word usually although not necessarily imports something of moral delinquency. Violence of temper, indifference or vacillation of feeling toward the child, or inability or indisposition to control unparental traits of character or conduct, might constitute unfitness. So, also, incapacity to appreciate and perform the obligations resting upon parents might

render them unfit, apart from other moral defects. Parents are the natural guardians of their children. They are under the legal as well as the moral obligation to support and educate them and to bring them up to be healthy, intelligent and virtuous, to the end that they become good citizens and leave the world better for having lived in it. In civilized countries, the family is the unit of the social order. Upon the integrity, purity and strength of the family, the welfare of mankind depends according to present conceptions. The law recognizes and enforces underlying principles and obligations to maintain the family. These principles must yield to considerations touching the general public good based on the need and advantage of the child. In the present context the word "unfit" has implications with respect to the child as well as to the parent. It is conceivable that certain parents might be fit to bring up one child and unfit to bring up another. In this connection the welfare of the child is important. That factor has been emphasized chiefly in proceedings of a different nature touching the custody of children. It has been said that the first and paramount duty of courts is to consult the welfare of the child. To that governing principle every other public and private consideration must yield. Parents are the natural guardians of their minor child and entitled to its custody. But they have no absolute property right of which they can in no way be deprived without their consent. Their right will not be enforced to the detriment of the child. It is in the nature of a trust reposed in them, is subject to their correlative duty to care for and protect the child, and may be terminated by their failure to discharge their obligations. These rules have been declared in proceedings for habeas corpus of a child, *Curtis* v. *Curtis*, 5 Gray, 535, 537, *Dumain* v. *Gwynne*, 10 Allen, 270; for adoption, *Purinton* v. *Jamrock*, 195 Mass. 187; for recovery for expenses incurred by the mother arising from tortious injury to a child, *Tornroos* v. *R. H. White Co.* 220 Mass. 336, 341, 342; and for proceedings between disagreeing parents respecting the custody of the child, *Hersey* v. *Hersey*, 271 Mass. 545, 555. *Oliver* v. *Oliver*, 151 Mass. 349, 351. *Commonwealth* v. *Briggs,* 16 Pick. 203.

*Harding* v. *Brown,* 227 Mass. 77, 87. See also *Reynolds* v. *Sweetser,* 15 Gray, 78, 80–81, *Creeley* v. *Creeley,* 258 Mass. 460, 463, *Haskell* v. *Haskell,* 152 Mass. 16, and the opinion of Chief Justice Shaw in *Pool* v. *Gott,* 14 Law Rep. 269. The custody of the child may even be awarded to a third person. *Stone* v. *Duffy,* 219 Mass. 178, 181. *United States* v. *Green,* 3 Mason, 482. These principles respecting the welfare of the child are entitled to their appropriate weight in a proceeding like the present and could not rightly have been wholly ignored by directing attention exclusively to the abstract question whether the parents were "unfit." The unfitness of parents in this section of the statute must be determined with respect both to their own character, temperament, capacity, and conduct, and to the welfare of the child in connection with its age, environment and affections.

In the case at bar the findings do not contain any such elements of unfitness of the parents as those to which allusion has been made. It is specifically found that the character and reputation of the parents are good, and that they have a good home. While the petitioners are found to be able to do more for the child than her parents, that does not appear to have been an important factor in the decision and we do not attach weight to it. The finding or ruling that the "parents are in a legal sense unfitted to have the custody of" their child is not amplified or explained in the finding by the trial judge. It carries some implication that unfitness in a legal sense is something different from unfitness as commonly understood. Its precise meaning must rest upon the subsidiary findings (1) that there was "an understanding or agreement between the parties" that the child "was to stay with the petitioners and that no claim for her support was to be made upon the respondents," and (2) that by their conduct the parents have voluntarily permitted the *quasi* relation of parent and child between the petitioners and the child, with all its natural and tender ties, to spring into existence and grow strong for a period of almost five years without let or hindrance on their part.

It is clear from this record that there was no formal and

unequivocal contract entered into between the parties. Contracts of that nature are not uncommon. They are recognized as having incidents which, when carried into effect, usually operate as a bar to the rights of the parents on the ground of either contract or estoppel, subject always to the supreme inquiry as to the requirements of the welfare of the child. *Curtis* v. *Curtis*, 5 Gray, 535, 537. *Dumain* v. *Gwynne*, 10 Allen, 270, 274, 275. There is no special sanctity in a written contract touching this subject. It is easy of proof, is not readily susceptible of misunderstanding, and naturally covers points which might be overlooked in a less explicit arrangement. Oral contracts are doubtless of equal validity if proved with reasonable certainty. See *Commonwealth* v. *Hammond*, 10 Pick. 274.

The brief narration of facts in the report indicates that there was not a purpose common both to the petitioners and to the respondents that there was to be a binding contract. The finding that the parties had "at intervals conferences or arguments concerning" their respective rights and duties with reference to the child seems at variance with the conception of a completed contract. The terms of the "understanding or agreement" are not set out in the record. It does not appear for how long a period the child was to remain with the petitioners, nor does it appear what rights of visitation or access to the child were to be retained by the parents. The finding as to "understanding or agreement" does not go far enough to establish such relinquishment of parental rights by the respondents as to prevent them from asserting opposition to this petition. The expenses incurred by the petitioners in the care and nurture of the child are important but not decisive factors. See *Silano* v. *Carosella*, 272 Mass. 203.

The second branch of the finding, upon which rests the conclusion of the trial judge that the parents were "in a legal sense" unfit to have the custody of their child, rests upon the facts that the respondents permitted their child to remain with the petitioners until ties of affection had come into existence between them and the child the severance of which now would cause pain and sorrow to

all three. If the child were older, this circumstance might well be decisive.

A case of this nature is especially adapted to determination by the wise judge experienced in settling the delicate problems arising in courts concerning domestic relations. Great weight must be given to the decision of the probate judge. The case at bar is very close. But in the light of all the considerations stated, we do not think that there are sufficient facts set out in the findings to support the conclusion that the parents are "unfit," in the sense in which that word is used in the statute, to have the custody of the child, or that her welfare requires that she be committed to the custody of the petitioners. The child was, at the time of the filing of the petition and the hearing in the Probate Court, about five and one half years of age. She is now a little over six years old. The petitioners and respondents live in towns not far separated from each other. The kinship between them would indicate constant acquaintance of the child with her own family. Apparently the child is not a stranger to her parents, and there is no indication of natural or inherent incompatibility between them. She is young enough so that in these circumstances she will in the ordinary course of events readily become adjusted to happy relations with her own nearest blood relatives, if she returns to her own father and mother and their parental care. Other things being equal, that care is doubtless the best. She will also then have the advantage of being reared with her seven brothers and sisters. Apart from the understanding between the respondents and petitioners, the ultimate legal responsibility for the support of the child rests upon her father and not upon the petitioners.

This conclusion is in accordance with the principles declared in our own decisions. While there is superficial diversity in the emphasis placed upon some of these principles in courts of other jurisdictions, and in some the rights of parents may be given greater weight than in our own cases, the following contain helpful discussion: *Bonnett* v. *Bonnett*, 61 Iowa, 199. *Coffee* v. *Black*, 82 Va. 567. *Green* v. *Campbell*, 35 W. Va. 698. *Weir* v. *Marley*, 99

Mo. 484. *State* v. *Deaton*, 93 Texas, 243. *Wilcox* v. *Wilcox*, 14 N. Y. 575. See for collection of cases 41 L. R. A. (N. S.) 564, 578.

*Decree reversed.*