ALBERTA E. GORDON *vs.* WALTER B. GORDON & another.

Middlesex.     November 6, 1944. — January 4, 1945.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Minor.     Parent and Child.     Guardian, Of minor.*

A decree under G. L. (Ter. Ed.) c. 201, § 5, awarding guardianship with custody of a six year old girl to her aunt, with whom and her uncle she had lived, supported by them, for over three years, having had "only casual contacts" with her parents during that period, was wrong on a report of all the material facts found by the judge, although it appeared therefrom that there was mutual affection between the child and her uncle and aunt, that they were able to do more for her materially than her parents, that to return the child to the parents would "violently disrupt the only experience of life that she has known," and that her mother had refused to allow a necessary minor surgical operation to be performed on her, where it also appeared that the judge would not find the mother unfit with respect to her management of her household and of her two other young children, where little appeared respecting the father other than that he did not participate personally in the litigation, and where it did not appear that either parent was other than a person of good character or that their home life was other than wholesome and respectable: the child's welfare was not shown to be so affected as to justify depriving her parents of their natural right to her custody, nor could it be concluded properly that they were unfit to have that custody.

PETITION, filed in the Probate Court for the county of Middlesex on September 14, 1943, for the appointment of

the petitioner, or some other suitable person, as guardian of Patricia Ann Gordon, daughter of the respondents, "with custody the parents being unfit therefor."

The case was heard by *Poland*, J., whose report of material facts, filed on March 8, 1944, stated that the issue was whether the petitioner had "sustained the burden of proving the parents are 'jointly unfit' to have custody, as stated in" G. L. (Ter. Ed.) c. 201, § 5: the "child has no property."

*G. E. Constantino*, for the respondents.

*C. S. McLaughlin*, for the petitioner.

Lummus, J. This is an appeal from a decree appointing the petitioner guardian of the person and estate of Patricia Ann Gordon, the six year old daughter of Walter B. Gordon and Katherine Gordon who are the appellants. The evidence is not reported, but the judge reported the material facts found by him with the statement that all "material subsidiary facts are stated herein and upon them . . . the court finds that the respondents are jointly unfit to have custody of this child and that her welfare will be better promoted if custody be awarded to the petitioner." The report therefore has the same effect as one made under the provisions of G. L. (Ter. Ed.) c. 215, § 11.

The material facts found by the judge are these: The petitioner and her husband, who is a paternal uncle of the child, are "in the fifties" and have no children. The petitioner's husband earns $50 a week, and "they" are fully competent to give the child good care, proper training and education. The parents of the child "seem to be in the thirties," and have two other children, a daughter, Jane, now seven years of age, and a son twenty months of age. The father earns about $30 a week. "The child will be more secure economically with the petitioner than with her parents." In July, 1939, her mother suffered an injury to her hand and the petitioner took the child and cared for her for nine months, at the expiration of which time her mother "took her back." On May 31, 1940, the child was returned to the petitioner with whom she has remained since. The petitioner and her husband since then have borne all the

expenses of the child and have no intention of claiming recompense for her past or future maintenance and education. "They wish to continue to support and to educate her because of their love for her. The child has for them the usual affection of a child for its natural parents. For three and one half years she has had only casual contacts with her parents. To take her from the only environment that she knows would violently disrupt the only experience of life that she has known. The child's interests would be badly served by placing her in the custody of the respondents. The parents have been content until recently that the child should be in the de facto custody of the petitioners [*sic*]. The evidence does not disclose a reason for their change of mind. The mother as a witness showed a feeling to the petitioner that is definitely spiteful. She testified that if the child is returned to her, she will not allow the petitioner to visit the child, or the child to visit the petitioner, and that she will not permit the child to go back to see her present playmates. She further testified that she meant to destroy the child's love for the petitioner and that she would insist on her right to have the child even if that would conflict with the child's best interests. The petitioner's sincere wish to do her best for the child warrants the inference that she will do nothing to prevent her from having an appreciation of her parents and a normal relationship to her sister and brother." With respect to the care that the mother of the child gives to her other two children, the judge found that she has managed those children and her household reasonably well, but that in certain instances she has not performed her full duty; that the "three children have some maladjustment, possibly malformation of the feet which requires correction which the petitioner has furnished to the subject child and which the parents have not furnished to the other children who now need it"; that they have "somewhat" neglected the teeth of Jane, which are defective; that the mother has left the two children in the house alone for periods of at least ten minutes and probably somewhat longer while she went to a nearby shop, relying on the doubtful oversight of a neighbor in the next house,

that no harm resulted, but that she lacks a full appreciation of the risks involved; and that in February, 1940, she was slow in attending to Jane's infected glands which finally became so bad that she asked and received the aid of the petitioner and the latter's physician in getting the proper medical care for Jane. With relation to these findings concerning the mother's management of her household, the judge concluded, however, that if "the issue depended solely on the evidence of the mother's management of the two children the court would not find her unfit." The judge further found that the mother has definitely failed to appreciate her duty to the child in question, since she has refused to give her consent to having the child's tonsils removed, although they are infected and the petitioner upon medical advice has sought without avail to obtain her consent to the operation, the expense of which the petitioner proposed to bear; and that the mother has no justifiable reason for her uncompromising attitude. With respect to the father of the child, the judge stated that he appeared in the present proceeding by counsel but that, so far as the evidence discloses, he was not present in person; that no explanation was offered for his absence; that there was no direct testimony as to his "fitness"; that there is nothing in the evidence "to rebut the inference which the court makes, either that he knew of and acquiesced in his wife's dealing with the premised facts, or that he is careless of the child's interests"; that, if "he sincerely believes that the child's welfare requires her return to him, he owes her the duty to present himself personally in court to support that belief with all the facts known to him"; and that the "only evidence that shows him to have given any consideration to the child's situation while in the petitioner's care is that he made a single visit to her on one birthday." In conclusion the judge found that the respondents are "jointly" unfit to have custody of the child, and that her welfare will be "better promoted" if custody be awarded to the petitioner.

We concur in the conclusion of the judge that the findings relating to the mother's management of her two children and her household, standing alone, would not warrant

a finding that she was unfit to have their custody. Applying those findings to the other facts found by the judge, we are of opinion that they do not serve to fortify the ultimate conclusion that the parents of Patricia are unfit to have her custody. See *Commonwealth* v. *Ball*, 259 Mass. 148, 152; *Bottoms* v. *Carlz*, 310 Mass. 29, 35.

The determination of the present case is governed by the basic principles set forth in *Richards* v. *Forrest*, 278 Mass. 547, following many prior decisions of this court. The findings of the judge in the present case to the effect that the petitioner and her husband love Patricia, that for three and a half years she has had but casual contacts with her parents, that she holds the petitioner and her husband in the usual affection that a child would have for her natural parents, that to return her to them would violently disrupt the only experience of life she has known, that if Patricia is returned to her parents her mother will not permit the petitioner to visit Patricia nor Patricia to visit the petitioner, and that the petitioner will do nothing to prevent her having an appreciation of her parents and a normal relationship to her sister and brother, do not furnish valid grounds for depriving her parents of her custody. Substantially the same findings were made by the judge in *Richards* v. *Forrest*, 278 Mass. 547. In that case this court did not attach weight to a finding that the petitioners were able to do more for the child than her parents (page 554), and pointed out that the child concerned in that case was six years of age, that there was no indication of any material and inherent incompatibility between the child and her parents (that is so here), and that she was young enough so that "she will in the ordinary course of events readily become adjusted to happy relations with her own nearest blood relatives, if she returns to her own father and mother and their parental care . . . [and that] she will also then have the advantage of being reared with her seven brothers and sisters" (page 556). These conclusions were preceded by a statement of the underlying principles with relation to the maintenance of the family, "the unit of the social order" in civilized countries, which yield only "to considerations touching the gen-

eral public good . . . with respect to the child as well as to the parent" (page 553). In the instant case there is nothing to show any desertion of Patricia. While she was in the household of the petitioner she was there with the consent of her parents, and the judge has found that they were content until recently that she should be in the "de facto" custody of the petitioner. While the petitioner and her husband have supported Patricia since she has been in their care, that was a voluntary act on their part, and the acquiescence of the parents cannot be said properly to have been occasioned by any disregard of their duty to support her. It is also to be observed that during that period the mother of Patricia gave birth to a son, an event that carried with it the duties of additional care as in most families. It is a fair inference that this situation may have had some influence on the action of the parents of Patricia in permitting her to remain with the petitioner.

What we have said above leads to a consideration of the finding of the judge with relation to the refusal of the mother of Patricia to comply with the request of the petitioner for permission to have Patricia's infected tonsils removed, a process that the judge describes as a minor operation. Considering this fact in connection with the finding of the judge that, upon the evidence with respect to the management by the mother of the other two children and her household, he would not find her unfit to have their custody, we think that the fact alone that she refused to permit the petitioner to have Patricia's tonsils removed is not a sufficient ground for depriving the mother of the custody of Patricia. We are unable to reach the conclusion that the mother, while not unfit to have the custody of her two other children, is unfit to have that of Patricia.

We are of opinion that the findings of the judge concerning the attitude of the father toward Patricia do not support a conclusion that he is an unfit person, within the meaning of the statute, to have the custody of her. That his earnings are less than those of the petitioner's husband has no weight. We think that his failure to give evidence at the hearing before the judge does not justify a finding

that he thus exhibited such lack of care for Patricia as to unfit him to have her custody. He is an appellant, and it is a fair inference that he left to his wife the management of the litigation, just as it appears that the petitioner's husband, a paternal uncle and blood relative of Patricia, did not join with his wife in the petition for custody but left the matter to her. There is nothing in the findings to support a conclusion that either of the parents is other than a person of good character, or that their home life is other than wholesome and respectable in environment, accompanied by the usual difficulties that confront families in humble circumstances. Without good cause Patricia should not live apart from her sister and brother and parents. *Richards* v. *Forrest*, 278 Mass. 547, 556. The ages of the petitioner and her husband, contrasted with those of the parents of Patricia, support an inference that in the ordinary course of events a more permanent home will be afforded her in the household of her parents. All the underlying principles governing the present case are fully discussed in the *Richards* case. To repeat here all that is said so decisively there would serve no useful purpose. On all the facts found and the reasonable inferences therefrom, we are of opinion that the welfare of Patricia is not so affected as to justify depriving her parents of their natural rights to her custody, and that it cannot be concluded properly that they are unfit persons to have that custody.

*Decree reversed.*
*Petition dismissed.*