EDWARD J. STINSON *vs.* WILLIAM F. MEEGAN & another.

Middlesex.     May 9, 1946. — June 3, 1946.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Parent and Child.   Minor.*

The mere facts, that, in two years elapsing between hearings on the issue of a father's right to custody of a young child who had lived with her maternal aunt and uncle practically since birth, the child and her father and his family had become strangers to an even greater degree than before, and that the adverse effect upon the child of transferring her to an unfamiliar environment would be greater at the time of the later hearing than it would have been at the time of the earlier hearing, did not show such a change of circumstances in the two years as to warrant a conclusion after the later hearing that, although the father had been shown to be entitled to custody on the evidence at the earlier hearing, he no longer was so entitled.

PETITION, filed in the Probate Court for the county of Middlesex on March 24, 1943.

Following the decision of this court made on June 29, 1945, and reported in 318 Mass. 459, the case was heard by *Poland*, J., in November, 1945. The petitioner appealed from a decree dismissing the petition.

*W. J. Barry*, for the petitioner.

*P. P. O'Connor*, for the respondents, submitted a brief.

RONAN, J.   When this petition, which was brought under G. L. (Ter. Ed.) c. 248, §§ 35–40, by a father to secure the release of his daughter Mary, who was born in 1937, from the custody of the respondents, who are husband and wife, the wife being the maternal aunt of the child, came before this court on an appeal from a decree of the Probate Court dismissing the petition, *Stinson* v. *Meegan*, 318 Mass. 459, it was held after a careful analysis of all the evidence and the findings of the trial judge, including a finding that "the child has formed associations [with the respondents] that cannot be severed without injury to it" (page 464), that it did not appear that the petitioner was not a suitable person to have the care and custody of his child or that the home that he maintained with his present wife, together with a

brother and sister of Mary and two other children by his second wife, was not a proper home in which to bring up Mary, and that the petition should have been allowed. It was stated in the opinion that, if any material changes had occurred during the two years that had elapsed between the hearing in the Probate Court and the date of the rescript, the parties could show such changes in further proceedings in the Probate Court without commencing any new proceeding. Thereafter the petition came on for further hearing in the Probate Court before a judge different from the one who presided at the first hearing. The parties agreed that the facts stated in the previous opinion of this court should be taken as showing the situation as it existed at the time of the first hearing in the Probate Court in 1943, and that the only issue was whether decisive changes in the governing circumstances had since occurred. The judge saw Mary, who was present in the court room. He accepted as true the testimony of a psychiatrist that the child's mental health would be injured if she was transferred to a wholly unfamiliar environment, and that the injury would be considerably greater now than it would have been if she had gone to her father's home in 1943. He found that the child had not visited her father's house for a year and a few months before the present hearing; that her father had not visited her for over a year or given her anything or communicated with her during the last year; that his service in the Coast Guard Reserve was not a reasonable excuse for his total neglect of her; that her father and the five other members of his family are now strangers to her in a greater degree than they were in 1943; and that if the child is taken from the respondents and placed in her father's home "her emotional life would be thrown out of balance and the development of her personality distorted." He further found that, if the petitioner had a right to her custody in 1943, his continuing neglect, the absence of any association of the child with his family, and her development of a larger sensitivity to her environment have changed the entire situation. The petitioner appealed from a decree dismissing the petition.

A parent is the natural guardian of his child, and he is

not to be deprived of its custody in the absence of a showing that he is unfit to have such custody. Unfitness in this respect is not confined to the lack of moral and personal qualities of the parent but extends to all the other factors arising in a particular case and involved in determining what the welfare of the child requires. The failure of the petitioner to visit or communicate with his child "during the last year" was not decisive. The only material change in the situation now existing from what it was in 1943 is that the ties of affection between the child and the respondents have become strengthened and those between her and her father have become weakened. That this is not an unusual occurrence in this class of cases is shown by our decisions. Standing alone, it is not enough to prevent a parent, otherwise entitled to custody, from securing the custody of his child. The governing principles have been recently set forth, and there is no need of restating them. An examination of the evidence and the findings does not show any such change of circumstances as would alter the opinion expressed in the previous decision that the father was entitled to prevail. The final decree is reversed and a decree is to be entered granting the petition. *Richards* v. *Forrest*, 278 Mass. 547. *Gordon* v. *Gordon*, 317 Mass. 471. *Stinson* v. *Meegan*, 318 Mass. 459.

*So ordered.*