G. Warren Hirshson & another *vs.* John Philip Gormley & others.

Bristol. October 25, 1948. — December 8, 1948.

Present: Qua, C.J., Lummus, Ronan, Wilkins, & Williams, JJ.

*Guardian,* Of minor. *Parent and Child. Minor. Probate Court,* Appeal. *Words,* "Unfit."

Under G. L. (Ter. Ed.) c. 215, § 9, as amended, grandparents of a minor child were not "aggrieved" by a decree of a Probate Court adjudging the child's parents unfit to have custody of him and appointing others to be his guardians with custody, and were not entitled to appeal from the decree.

A conclusion that the parents of a three year old girl living with others were "unfit" to have custody of her within G. L. (Ter. Ed.) c. 201, § 5, was justified by findings as to the circumstances in which the mother lived in a small apartment as housekeeper for two men not related to her, and the father lived in a distant State where he had no facilities for caring for the child.

PETITION, filed in the Probate Court for the county of Bristol on December 6, 1947.

The case was heard on the merits by *Hitch*, J. A motion to dismiss an appeal from the decree entered by him was heard by *Fuller*, J.

In this court the case was submitted on briefs.

*W. B. Perry, Jr., & R. L. Genensky*, for the petitioners.

*R. Paull*, for the respondents.

LUMMUS, J. On December 4, 1947, an appeal by G. Warren Hirshson and his wife, Marie A. Hirshson, from a decree dismissing their petition for appointment as permanent guardians of M. Camille Gormley, a minor, was dismissed because they were not persons aggrieved. *Hirshson* v. *Gormley*, 322 Mass. 130. On December 6, 1947, the same petitioners brought a new petition in the Probate Court, praying for their appointment as guardians of the same minor, with custody of her person. On February 5, 1948, a decree was entered appointing them accordingly, the parents of the child being found unfit to have her custody. The parents, John Philip Gormley and Norma Jean Gormley, and also the maternal grandparents, Woodson Hobbs and Lena Hobbs, appealed. The petitioners moved to dismiss the appeal of the grandparents, on the ground that they are not persons aggrieved by the decree. The Probate Court denied that motion, and the petitioners appealed from that denial.

The evidence is not reported, but the judge made a report of the material facts, under G. L. (Ter. Ed.) c. 215, § 11, as amended by St. 1947, c. 365, § 3. The judge found in substance as follows. The child is three years old. Her mother, Norma Jean Gormley, was married before, and had two children by the first marriage, one of whom is in her custody. Her second husband, John Philip Gormley, was in the army until December, 1946. While her husband was in the army, she was a professional dancer, appearing in night clubs. She left Camille with the petitioners in New Bedford, agreeing to pay $10 a week besides paying for clothes and medical expenses. She paid only for one week, and visited the child but twice. After the first petition was

dismissed, the parents made no attempt to provide a home for Camille, who remained in the custody of the petitioners. The father went to his mother's home near Seattle, Washington, and the mother went to New York, where she is living in a small apartment with two men, neither of whom appears to be related to her. Her status is "that of a housekeeper." She has paid no board and has accepted whatever money the men gave her. "It was claimed that the two men occupied the bedroom with a double bed," and the mother occupied a couch in the living room. She cares for a small child of one of the men. The judge found that "the apparent disregard of the proprieties on the part of Mrs. Gormley and the suspicion it creates shows that she is not the kind of a mother to set an example for her child." The judge found the mother unfit to have the custody of the child.

The judge found that the father of the child is not living with his wife, but lives with his mother near Seattle, Washington. He showed no interest in the hearing, and neither testified nor gave a deposition. He has no facilities for taking care of the child. The judge found that he "is manifestly unfit to have custody of her."

The first question is whether the grandparents are persons "aggrieved," within G. L. (Ter. Ed.) c. 215, § 9, as amended by St. 1945, c. 469, § 1, and St. 1947, c. 360, so as to be entitled to appeal. In *Hirshson* v. *Gormley*, 322 Mass. 130, 131, this court said, "Other than one seeking to enforce a public or official right, to be a person aggrieved and therefore entitled to appeal under G. L. (Ter. Ed.) c. 215, § 9, it must appear that the person has been affected in some pecuniary interest or personal right." In *Lawless* v. *Reagan*, 128 Mass. 592, the grandmother of minor children whose parents were dead was appointed their guardian. It was held that the stepmother of the children had no right to appeal. In *Hayden* v. *Keown*, 232 Mass. 259, 262, it was held that an administrator who has been removed is not aggrieved by the decree appointing his successor. In *Reed* v. *Home National Bank*, 297 Mass. 222, it was held that an executor named in an earlier will has no standing to

contest a later one. In *Ensign* v. *Faxon*, 224 Mass. 145, 149, it was said that "A guardian of an insane ward has no right to appeal from a decree of the Probate Court discharging him from his trust as guardian on the ground that his ward is no longer insane." In *Delaney* v. *Cook*, 256 Mass. 203, it was held that a cousin of a minor child whose parents were dead was not aggrieved by a decree denying a petition for the removal of the child's grandfather as guardian. In the present case the grandparents are not responsible for the support of the child. They have no natural right to her custody. We think that they are not "aggrieved," and that their appeal must be dismissed.

It is provided by G. L. (Ter. Ed.) c. 201, § 5, that the parents of a minor child shall have the custody of his person and the care of his education, even though a guardian is appointed, unless the Probate Court gives such custody and care to the guardian because the parents have consented or because the court finds the parents "unfit therefor." The burden of proving the parents unfit is upon the petitioners. On the evidence the judge found that both parents were unfit. The word "unfit," in general, means unsuitable, incompetent, or not adapted for a particular use or service. *Richards* v. *Forrest*, 278 Mass. 547, 552. In the cases in which parents have been held not unfit, they have had a good home or could readily establish one. *Richards* v. *Forrest*, 278 Mass. 547, 554. *Bottoms* v. *Carlz*, 310 Mass. 29, 32. *Gordon* v. *Gordon*, 317 Mass. 471, 477. *Stinson* v. *Meegan*, 318 Mass. 459, 463. In *Cassen* v. *Cassen*, 315 Mass. 35, 37, it was said that the word "unfit" includes "the conception of being unsuitable or ill adapted to serve under the existing circumstances . . ., and this is to be adjudged with reference primarily to the welfare of the child." And in *Erickson* v. *Raspperry*, 320 Mass. 333, 335, it was said that "the paramount issue is the welfare of the child." See also *Clark* v. *Clark*, 321 Mass. 682. It appears improbable that the parents will ever live together or provide a home for the child. The finding that they are unfit appears amply supported. There is nothing in the record to show that giving the child to the grandparents would be for her

benefit. The child has been with them very little, and they are comparatively strangers to her. The judge found that the petitioners have proved their love for the child, that with them she would have excellent care and training in the best home atmosphere, and that it is for the good of the child that they be appointed guardians with custody of the child.

*Appeal of grandparents dismissed.*
*Decree affirmed.*