ADOPTION OF A MINOR.

Hampden.   September 27, 1961. — December 8, 1961.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Adoption.   Illegitimacy.   Words,* "Wilfully."

Facts found by a judge of probate respecting a girl, less than ten years
old, who shortly after her birth out of wedlock had been placed by her
mother in the home of the mother's married sister and had lived there
since, forming strong bonds of affection with the sister and the sister's
husband and children and regarding herself "as an integral part of" the
family, justified a conclusion by the judge that the best interests of the
girl required allowance of a petition by the sister and her husband to
adopt the girl and denial of a like petition by the mother, then married,
and her husband, although it was also found that the mother and her
husband, as well as the sister and her husband, would be "worthy
adoptive parents" and could furnish the girl approximately the same
material advantages as the sister and her husband.   [294–296]

Where the mother of a girl born out of wedlock and placed by the mother
in the home of the mother's married sister failed to furnish any sup-

port for the girl for several years before the sister and her husband filed a petition for adoption of the girl, although, after the filing of a like petition by the mother, then married, and her husband some twenty months before the filing of the petition of the sister and her husband, the mother and her husband were "ready, willing and able to support" the girl "if and when" she was "turned over to them," a ruling was justified that within G. L. c. 210, § 3, as amended by St. 1955, c. 89, the mother had "wilfully . . . neglected to provide proper care and maintenance for . . . [the girl] for one year last preceding the date of the petition" of the sister and her husband, so that the consent of the mother thereto was not required under § 2. [296–298]

An agreement made between the mother of a girl born out of wedlock and the mother's married sister when the mother placed the girl in the sister's home shortly after the girl's birth, that the sister would return the girl to the mother if the mother "ever got married and was able to provide a home for" the girl, which later occurred, did not bar allowance of a petition by the sister and her husband to adopt the girl where such adoption was for the best interests of the girl. [298]

Two PETITIONS for adoption filed in the Probate Court for the county of Hampden on June 4, 1958, and January 20, 1960, respectively.

The cases were heard by *Smith*, J.

*Joseph Swirsky*, for the appellants.

*Francis P. Tehan*, for the appellees.

SPALDING, J. These are two petitions for the adoption and change of name of a minor child. The first petition (hereinafter called the mother's petition), in order of time, was brought by the natural mother of the minor and her husband. The second petition (hereinafter called the sister's petition) is brought by the mother's sister and her husband. The petitions were heard together and the judge made a voluntary report of material facts. The evidence is not reported.

Pertinent findings of the judge are these. The minor was born on November 6, 1951. At that time the mother was unmarried. Pursuant to an arrangement made by the mother and her sister the minor was turned over to the sister about a week after her birth. The sister agreed to return the child to the mother if she ever married and was able to provide a home for her. The mother agreed to pay the sister $10 a week for the child's care. Thereafter the child has lived continuously in the sister's family. During

this entire period the mother paid the sister not more than $50 for the support of the child and has paid nothing since 1952.

In February, 1954, a second daughter was born to the mother out of wedlock. On April 28, 1956, the mother married her copetitioner and they have adopted the second daughter. A son was born to the mother and her husband in May, 1957.

The sister and her husband have two children (a son and a daughter) of their own. They are extremely fond of the minor and have provided her with excellent care and maintenance since they took her into their home. Their "two . . . children have treated . . . [the minor] as a younger sister, and she in turn, is very fond of them." The "child has always regarded herself as an integral part of the . . . [sister's] family," and "considered the . . . [sister and her husband] as her true parents until someone called her attention to a legal notice . . . in connection with these adoption proceedings." She was then told by the sister who her natural mother was but this "made no difference in their relationship." "There are strong bonds of love and affection between . . . [the minor] and all the members of the . . . [sister's] household, and the child evidences the security concomitant to being reared in such an environment." "[M]aterially each set of petitioners can offer approximately the same advantages to the child and each would be worthy adoptive parents." The judge concluded "that it would be for the best interests and welfare of the child that the . . . [sister's] petition be allowed." Decrees were entered dismissing the mother's petition and granting the sister's petition. The mother and her husband appealed.

1. The principles governing the adoption or custody of a child have often been stated. See *Richards* v. *Forrest*, 278 Mass. 547; *Gordon* v. *Gordon*, 317 Mass. 471; *Stinson* v. *Meegan*, 318 Mass. 459; *Erickson* v. *Rasppery*, 320 Mass. 333, 335; *Gally, petitioner*, 329 Mass. 143; *Adoption of a Minor*, 338 Mass. 635, 643. The paramount consideration in such cases is the welfare of the child. Guided by the

principles set forth in the decisions, we are of opinion that the judge did not err in concluding that the best interests and welfare of the child required the allowance of the sister's petition. We have not overlooked the weight which our decisions have given to the interest of natural parents. See *Richards* v. *Forrest,* 278 Mass. 547, 556; *Gordon* v. *Gordon,* 317 Mass. 471, 474–477; *Stinson* v. *Meegan,* 318 Mass. 459, 465–466. But that interest, important as it is, must yield when it is in conflict with the best interest of the child. We are mindful that the judge found that the mother and her husband were "worthy adoptive parents" and could offer the child approximately the same advantages as the sister and her husband. But there were other findings, we think, which tip the scales in favor of the latter. The child virtually since birth had been continuously in the sister's home. When the mother's petition was brought in 1958 the child had lived there for approximately six and one-half years. When the decree was entered in July, 1960, the child was nearly nine years of age; she is now ten years old. Throughout most of this period she has looked upon the sister as her "true" mother and has considered herself "as an integral" part of the sister's family. The following findings of the judge are also of significance. "In the report filed by the Department of Public Welfare in connection with the . . . [mother's] petition, there was a recital that although . . . [the mother] and her husband wanted to adopt . . . [the minor] . . . [they] planned to have the child continue to live with the . . . [sister]. At the hearing . . . [the mother] testified that if her petition were allowed, she would permit this for some indefinite transition period prior to her taking the child into her home permanently." There is the added finding that the mother and her sister had been friendly throughout the years but that, after the mother's petition was filed, the two families have not seen one another and bitterness has developed between them.

From these findings it would appear that the minor would continue to live in the sister's home for some time to come. If the mother's petition were to be granted, the

child would be in the incongruous situation of living in one family although she was the adopted child of another, the families not being on friendly terms. That this is not a desirable state of affairs from the standpoint of the child is obvious. What we said in a recent case is here apposite. "When a child is placed by its parent . . . in a good family the inevitable consequence will be that firm bonds of affection and confidence will rapidly arise on both sides. The damage to the child, who cannot understand what is happening, from breaking these bonds is something which even competent psychiatrists may be unable to predict. In the absence of compelling statutory command, such a breach should not be permitted lightly at the request of either of the natural parents who had their chance to take care of the child themselves and who themselves have created the unfortunate situation. The interests of the natural parents in such a case must be completely subordinated to the permanent interest of the child." *Adoption of a Minor,* 338 Mass. 635, 643.

2. It is provided by G. L. c. 210, § 2, that no decree of adoption of an illegitimate child shall be made without the consent of the mother. There was no such consent here. This lack of consent is fatal to the decree in favor of the sister and her husband unless the facts found by the judge bring the case within the terms of G. L. c. 210, § 3, as amended through St. 1955, c. 89, which provides that such consent is not required if the parent has "wilfully deserted or neglected to provide proper care and maintenance for such child for one year last preceding the date of the petition . . .." The judge ruled that the consent of the mother was not required, and we must decide whether this ruling was justified on the facts.

Facts found by the judge, in addition to those recited above, which bear on this issue are: Neither the sister nor her husband ever demanded any money from the mother for the minor's support; nor did they ever complain because such financial assistance was not given to them. Since 1952 the mother never offered to contribute anything toward the minor's support. From the time of filing their

petition (June 4, 1958) the mother and her husband were "ready, willing and able to support . . . [the minor], if and when . . . [she] was turned over to them." "I find that . . . [the mother] has not provided proper care and maintenance for . . . [the minor] for one year last preceding the date of the . . . [sister's] petition. I rule, as a matter of law, that . . . [G. L. c. 210, § 3] is to be literally interpreted and applies to the situation presented in these petitions, even though there was an oral agreement on the part of the . . . [sister and her husband] to return the child to her natural mother as hereinbefore set forth."

There is no question that the mother of an illegitimate child has the duty to support the child; she is relieved of her duty only to the extent that aid can be obtained from the father. *Commonwealth* v. *Hall*, 322 Mass. 523, 528–529, and cases cited. The mother's petition was brought on June 4, 1958; the sister's petition was brought on January 20, 1960. For the year last preceding the date of the sister's petition no care and maintenance for the minor had been provided by the mother and her husband. And such failure to provide was wilful. The word "wilfully" in § 3 does not require that the neglect to provide be done with malevolence or ill will; it is enough if the conduct resulting in the failure to provide was not unintentional. It cannot be said that the conduct of the mother and her husband in this respect was unintentional. They intended the course of conduct which resulted in the neglect to provide; that is all that is required. See *Commonwealth* v. *Welansky*, 316 Mass. 383, 397–398.

The mother and her husband contend that the § 3 exception, making the mother's consent unnecessary, is not applicable in the circumstances here. The gist of their argument is this. When they filed their petition, some twenty months before the sister's petition, they alleged that they were willing and able to support the minor; and the judge found that they "were ready, willing and able to support . . . [her], if and when" she was turned over to them. It is contended that the appearance filed by the sister and her husband delayed the hearing on the mother's petition and

in effect constituted a rejection by the sister and her husband of the mother's offer (in her petition) to assume all legal responsibilities for the child. Stated differently, this contention presents the question whether, after six and one-half years of failure to provide support, the filing of a petition for adoption by the natural mother is tantamount to the furnishing of care and support to the child so that in any subsequent adoption proceedings brought by another party the consent of the natural mother would be required. The legislative history of G. L. c. 210, § 3 (see St. 1945, cc. 239, 300; St. 1951, c. 674; St. 1952, c. 352; St. 1953, c. 61), discloses a clear intent on the part of the Legislature to relax the requirement of parental consent to adoption when the withholding of consent by a neglectful parent would frustrate the furtherance of the best interests of the child. See *Adoption of a Minor,* 338 Mass. 635, 640–641. We are of opinion that the mere filing of the petition, in the circumstances, was not the equivalent of "proper care and maintenance," and that the judge correctly ruled that the mother and her husband came within the exception contained in § 3 making consent unnecessary.

It is also contended that the agreement between the mother and her sister precludes the allowance of the sister's petition. Under that agreement the sister agreed to return the child to the mother "if she ever got married and was able to provide a home for the child." We assume that the arrangements between the sisters constituted a contract of a sort. And we recognize that contracts with respect to the care and support of a child, if proved with reasonable certainty, are treated "as having incidents which, when carried into effect, usually operate as a bar to the rights of the parents on the ground of either contract or estoppel." *Richards* v. *Forrest,* 278 Mass. 547, 555. *Curtis* v. *Curtis,* 5 Gray, 535, 537. *Dumain* v. *Gwynne,* 10 Allen, 270, 274–275. But, as these cases make clear, such contracts involve something more than property rights and are "subject always to the supreme inquiry as to the requirements of the welfare of the child." *Richards* v. *Forrest, supra* at page 555.

*Decrees affirmed.*