# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 11, 2005 Session

## IN RE F.R.R., III

### Appeal from the Juvenile Court for Williamson County
No. 13526     Alfred Nations, Judge

---

### No. M2004-02208-COA-R3-PT- Filed March 1, 2005

---

This appeal involves the termination of a biological father's rights to his non-marital child. When the child was almost five years old, his mother and her husband filed a petition in the Williamson County Juvenile Court seeking to terminate the biological father's parental rights and to adopt the child. Following a bench trial, the juvenile court determined that the biological father had abandoned the child by willfully failing to visit him and that terminating the biological father's parental rights would be in the child's best interests. Accordingly, the court terminated the biological father's parental rights and approved the adoption. The biological father has appealed. We have determined that the record contains clear and convincing evidence that the biological father abandoned the child and that terminating the father's parental rights would be in the child's best interests.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., joined. WILLIAM B. CAIN, J., concurred in the results.

Gary W. Wicks, Sr., Franklin, Tennessee, for the appellant, F.R.R.

Deana C. Hood, Franklin, Tennessee, for the appellees, M.A.G. and G.F.G.

Robert H. Plummer, Franklin, Tennessee, Guardian ad Litem.

### OPINION

### I.

M.A.G. gave birth to F.R.R., III on May 21, 1999. F.R.R. is the child's biological father, but he and M.A.G. never married. M.A.G. retained physical custody of the child after he was born. F.R.R. saw his son regularly for several weeks immediately following the birth, but he stopped visiting when M.A.G. went on vacation with G.F.G., her new boyfriend. M.A.G. married G.F.G. approximately seven months later and moved to Chapel Hill, Tennessee. In 2003, the couple relocated with the child to Spring Hill, Tennessee.

On February 2, 2000, the Obion County Juvenile Court determined that F.R.R. was F.R.R., III's biological father and ordered F.R.R. to begin paying child support of $164.66 per month. On August 31, 2001, following the commencement of child support enforcement proceedings in the Marshall County Juvenile Court, F.R.R. filed a pro se petition to set visitation with the child. On October 31, 2001, the Marshall County Juvenile Court entered an order setting four dates for visitation in the months of November and December 2001. F.R.R. attended at least three of the four scheduled visitations, and spoke with his child on several occasions in January 2002. With the exception of one telephone call to the child on his birthday in May of 2003, F.R.R. made no further attempt to visit or to communicate with his child between January 2002 and May 2004. F.R.R. did pay the court-ordered child support fairly consistently, but he accumulated a significant arrearage over time.

On May 7, 2004, M.A.G. and G.F.G. filed a petition in the Williamson County Juvenile Court seeking to terminate F.R.R.'s parental rights and to allow G.F.G. to adopt F.R.R., III. M.A.G. and G.F.G. claimed that F.R.R. had abandoned the child by willfully failing to visit him or pay more than token support during the four months preceding the filing of the petition. At the subsequent bench trial, it was undisputed that F.R.R. had not visited or attempted to visit F.R.R., III in the four months preceding the filing of the petition and that F.R.R. had made approximately one-third of the required support payments during that time. F.R.R. admitted that M.A.G. and G.F.G. had never prevented him from visiting the child.

The juvenile court entered an order terminating F.R.R.'s parental rights on August 16, 2004. The trial court rejected the argument that F.R.R.'s support payments in the four months preceding the filing of the petition constituted only token support. However, the trial court found clear and convincing evidence that F.R.R. was guilty of abandonment because he had willfully failed to visit F.R.R., III during the four months preceding the filing of the petition. The trial court also found clear and convincing evidence that it would be in the best interests of F.R.R., III for F.R.R.'s parental rights to be terminated. F.R.R. appealed.

## II.
### THE STANDARDS FOR REVIEWING TERMINATION ORDERS

A biological parent's right[1] to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions.[2] *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2059-60 (2000); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993); *Ray v. Ray*, 83 S.W.3d 726, 731 (Tenn. Ct. App. 2001). While this right is fundamental and superior to the claims of other persons and the

---

[1]This right exists notwithstanding the marital status of the child's biological parents where a biological parent has established or is attempting to establish a relationship with the child. *Lehr v. Robertson*, 463 U.S. 248, 262, 103 S. Ct. 2985, 2993-94 (1983); *In re D.A.H.*, 142 S.W.3d 267, 274 (Tenn. 2004); *Jones v. Garrett*, 92 S.W.3d 835, 840 (Tenn. 2002); *In re Swanson*, 2 S.W.3d 180, 188 n.12 (Tenn. 1999). The right also extends to adoptive parents. *Simmons v. Simmons*, 900 S.W.2d 682, 684 (Tenn. 1995).

[2]U.S. Const. amend. XIV, § 1; Tenn. Const. art. I, § 8.

government, it is not absolute. *State v. C.H.K.*, ___ S.W.3d ___, ___, 2004 WL 1813277, at *2 (Tenn. Ct. App. 2004). It continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination. *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002); *In re S.M.*, 149 S.W.3d 632, 638 (Tenn. Ct. App. 2004); *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004).

Termination proceedings in Tennessee are governed by statute. Parties who have standing to seek the termination of a biological parent's parental rights must prove two things. First, they must prove the existence of at least one of the statutory grounds for termination.[3] Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *Jones v. Garrett*, 92 S.W.3d at 838. Second, they must prove that terminating the parent's parental rights is in the child's best interests.[4] Tenn. Code Ann. § 36-1-113(c)(2); *In re A.W.*, 114 S.W.3d 541, 545 (Tenn. Ct. App. 2003); *In re C.W.W.*, 37 S.W.3d 467, 475-76 (Tenn. Ct. App. 2000); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

No civil action carries with it graver consequences than a petition to sever family ties irretrievably and forever. Tenn. Code Ann. § 36-1-113(i)(1); *M.L.B. v. S.L.J.*, 519 U.S. 102, 119, 117 S. Ct. 555, 565 (1996); *In re Knott*, 138 Tenn. 349, 355, 197 S.W. 1097, 1098 (1917); *In re D.D.K.*, No. M2003-01016-COA-R3-PT, 2003 WL 23093929, at *8 (Tenn. Ct. App. Dec. 30, 2003) (No Tenn. R. App. P. 11 application filed). Because the stakes are so profoundly high, Tenn. Code Ann. § 36-1-113(c)(1) requires persons seeking to terminate a biological parent's parental rights to prove the statutory grounds for termination by clear and convincing evidence. This heightened burden of proof minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d at 622. Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable, *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003) (No Tenn. R. App. P. 11 application filed), and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *In re S.M.*, 149 S.W.3d at 639; *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d at 733; *In re C.W.W.*, 37 S.W.3d at 474.

Because of the gravity of their consequences, proceedings to terminate parental rights require individualized decision making. *In re Swanson*, 2 S.W.3d at 188. Accordingly, Tenn. Code Ann. § 36-1-113(k) explicitly requires courts terminating parental rights to "enter an order which makes specific findings of fact and conclusions of law" whether they have been requested to do so or not. *In re S.M.*, 149 S.W.3d at 639; *In re M.J.B.*, 140 S.W.3d at 653-54. These specific findings of fact and conclusions of law facilitate appellate review and promote just and speedy resolution of appeals. When a lower court has failed to comply with Tenn. Code Ann. § 36-1-113(k), the appellate courts

---

[3]The statutory grounds for terminating parental rights are found in Tenn. Code Ann. § 36-1-113(g) (Supp. 2004).

[4]The factors to be considered in a "best interests" analysis are found in Tenn. Code Ann. § 36-1-113(i).

must remand the case with directions to prepare the required findings of fact and conclusions of law. *In re D.L.B.*, 118 S.W.3d at 367; *In re K.N.R.*, No. M2003-01301-COA-R3-PT, 2003 WL 22999427, at *5 (Tenn. Ct. App. Dec. 23, 2003) (No Tenn. R. App. P. 11 application filed).

The heightened burden of proof required by Tenn. Code Ann. § 36-1-113(c)(1) requires us to adapt Tenn. R. App. P. 13(d)'s customary standard of review for cases of this sort. First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights. *Jones v. Garrett*, 92 S.W.3d at 838; *In re Valentine*, 79 S.W.3d at 548-49; *In re S.M.*, 149 S.W.3d at 640; *In re M.J.B.*, 140 S.W.3d at 654.[5]

### III.
#### THE WILLFULNESS OF F.R.R.'S FAILURE TO VISIT

F.R.R's lawyer conceded during oral argument that F.R.R. did not visit his son during the four months preceding the filing of the petition to terminate his parental rights. In fact, it is undisputed that F.R.R. had no interaction with F.R.R., III for approximately thirty months before the filing of the termination petition, except for a single brief telephone call in May 2003. Nevertheless, F.R.R. insists that the juvenile court erred by terminating his parental rights because his failure to visit F.R.R., III was not "willful."

The concept of "willfulness" is at the core of the statutory definition of abandonment. For the purpose of Tenn. Code Ann. § 36-1-102(1)(A)(i) (Supp. 2004), a parent cannot be found to have abandoned a child unless the parent either has "willfully" failed to engage in more than token visitation or has "willfully" failed to provide more than token monetary support to the child for four consecutive months. "Willfully" is a word of many meanings, and so each use of the word must be interpreted with reference to the statutory context in which it appears. *United States v. Sanchez-Corcino,* 85 F.3d 549, 552-53 (11th Cir.1996); *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003) (No Tenn. R. App. P. 11 application filed); GEORGE W. PATTON, A TEXTBOOK ON JURISPRUDENCE 313 n.2 (4th ed.1972) (suggesting that use of the word should be avoided because of its ambiguities).

In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. *G.T. v. Adoption of A.E.T.*, 725 So.

---

[5]These decisions draw a distinction between specific facts and the combined weight of these facts. Tenn. R. App. P. 13(d) requires us to defer to the trial court's specific findings of fact as long as they are supported by a preponderance of the evidence. However, we are the ones who must then determine whether the combined weight of these facts provides clear and convincing evidence supporting the trial court's ultimate factual conclusion. The Tennessee Supreme Court used this approach in *In re Valentine* when it recognized the difference between the conclusion that a biological parent had not complied substantially with her obligations in a permanency plan and the facts relied upon by the trial court to support this conclusion. *In re Valentine*, 79 S.W.3d at 548-49; *see also Jones v. Garrett*, 92 S.W.3d at 838-39.

2d 404, 409 (Fla. Dist. Ct. App. 1999). Nor does it require malevolence or ill will. *In re Adoption of a Minor*, 178 N.E.2d 264, 267 (Mass. 1961). Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. *In re Mazzeo*, 131 F.3d 295, 299 (2d Cir. 1997); *United States v. Phillips*, 19 F.3d 1565, 1576 (11th Cir. 1994); *In re Adoption of Earhart*, 190 N.E.2d 468, 470 (Ohio Ct. App. 1961); *Meyer v. Skyline Mobile Homes*, 589 P.2d 89, 97 (Idaho 1979). Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so.[6] *In re M.J.B.*, 140 S.W.3d at 654.[7] Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty, *In re Adoption of Lybrand*, 946 S.W.2d 946, 950 (Ark. 1997), or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with his or her child. *In re Serre*, 665 N.E.2d 1185, 1189 (Ohio Ct. C.P. 1996); *Panter v. Ash*, 33 P.3d 1028, 1031 (Or. Ct. App. 2001).[8] Thus, attempts by others to frustrate or impede a parent's visitation do not provide justification for the parent's failure to support the child financially. *Bateman v. Futch*, 501 S.E.2d 615, 617 (Ga. Ct. App. 1998); *In re Leitch*, 732 So. 2d 632, 636 n.5 (La. Ct. App. 1999).

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. *In re Adoption of S.M.F.*, No. M2004-00876-COA-R9-PT, 2004 WL 2804892, at *8 (Tenn. Ct. App. Dec. 6, 2004) (No Tenn. R. App. P. 11 application filed). Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct. *See Johnson City v. Wolfe*. 103 Tenn. 277, 282, 52 S.W. 991, 992 (1899); *Absar v. Jones*, 833 S.W.2d 86, 89-90 (Tenn. Ct. App. 1992); *State v. Washington*, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983); *see also In re K.L.C.*, 9 S.W.3d 768, 773 (Mo. Ct. App. 2000).

Having independently reviewed the record on appeal, we have no difficulty concluding, as the juvenile court did, that M.A.G. and G.F.G. established by clear and convincing evidence that

---

[6]A parent who fails to support a child because he or she is financially unable to do so is not willfully failing to support the child. *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995); *Pierce v. Bechtold*, 60 Tenn. App. 478, 487, 448 S.W.2d 425, 429 (1969).

[7]*See also Shorter v. Reeves*, 32 S.W.3d 758, 760 (Ark. Ct. App. 2000); *In re B.S.R.*, 965 S.W.2d 444, 449 (Mo. Ct. App. 1998); *In re Estate of Teaschenko*, 574 A.2d 649, 652 (Pa. Super. Ct. 1990); *In re Adoption of C.C.T.*, 640 P.2d 73, 76 (Wyo. 1982).

[8]Conduct that amounts to a significant restraint or interference with a parent's efforts to support or develop a relationship with a child includes (1) telling a man he is not the child's biological father, (2) blocking access to the child, (3) keeping the child's whereabouts unknown, (4) vigorously resisting the parent's efforts to support the child, or (5) vigorously resisting a parent's efforts to visit the child. *In re S.A.B.*, 735 So.2d 523, 524 (Fla. Dist. Ct. App. 1999); *In re Adoption of Children by G.P.B., Jr.*, 736 A.2d 1277, 1282 (N.J. 1999); *Panter v. Ash*, 33 P.3d at 1031.

F.R.R. willfully failed to visit F.R.R., III within the four months preceding the filing of the petition to terminate his parental rights. F.R.R. knew the child was his, fulfilled his duty to visit during the first few weeks after the child was born, succeeded in arranging and attending temporary court-ordered visitation in November and December of 2001, and admitted at trial that neither M.A.G. nor G.F.G. prevented him from visiting his child. F.R.R. knew at all times how to contact M.A.G., he was not incarcerated or disabled, he owned a car, and he knew how to obtain court-ordered visitation even without the assistance of a lawyer. While F.R.R.'s desire not to become a troublemaker to M.A.G. and her husband is admirable, it does not provide an excuse for his failure to make good faith efforts to establish a relationship with his child.

## IV.
### THE APPLICATION OF THE PARENTAL RELOCATION STATUTE

Finally, F.R.R. asserts that the juvenile court should not have found his thirty-month failure to visit his son willful because M.A.G. had failed to comply with the notification provisions in the parental relocation statute, Tenn. Code Ann. § 36-6-108(a) (2001),[9] when she and G.F.G. moved to Chapel Hill and later to Spring Hill. F.R.R.'s reliance on the parental relocation statute is misplaced for two reasons. First, he has failed to demonstrate that he was entitled to written notice under the statute. Second, he has failed to demonstrate how the lack of written notice of M.A.G.'s relocations materially impaired his ability to visit F.R.R., III regularly had he been inclined to do so.

Tenn. Code Ann. § 36-6-108 was enacted in 1998[10] in response to the Tennessee Supreme Court's decision in *Aaby v. Strange*, 924 S.W.2d 623 (Tenn. 1996). Its purpose is to provide a procedure for addressing disputes arising between divorced parents when a planned move by one parent will disrupt the parenting rights of the other parent. The statute is predicated on the assumption that both parents have legally enforceable visitation or custodial rights that could be adversely affected by one parent's decision to move.

The only relocation that was far enough to trigger Tenn. Code Ann. § 36-6-108 was M.A.G.'s move in December 1999 to Chapel Hill. However, when this relocation occurred, F.R.R. had no legally enforceable visitation rights. F.R.R. obtained limited visitation rights more than two years later in October 2001 when the Marshall County Juvenile Court allowed him four visits during November and December 2001. Because F.R.R. had no legally enforceable visitation rights in 1999, M.A.G. was not required by Tenn. Code Ann. § 36-6-108 to give him written notice that she planned to move to Chapel Hill.

---

[9]The parental relocation statute requires that if a parent desires to move more than one hundred miles from his or her child's other parent, "the relocating parent shall send a notice to the other parent at the other parent's last known address by registered or certified mail." The notice must contain a statement of intent to move, the location of the proposed new residence, the reasons for the proposed relocation, and a statement that the other parent may file a petition in opposition to the move within thirty days of receipt of the notice. Tenn. Code Ann. § 36-6-108(a)(1)-(4).

[10]Act of Apr. 22, 1998, ch. 901, 1998 Tenn. Pub. Acts 637.

We are unaware of any authority, and F.R.R. has pointed us to none, suggesting that one parent's failure to comply with the parental relocation statute, when it is applicable, provides the other parent with an automatic defense to an action to terminate his or her parental rights. At all relevant times, F.R.R. knew how to contact M.A.G. and his child. He conceded that he knew where M.A.G. and F.R.R., III were living and that he knew their home telephone number. Accordingly, we have no factual basis for concluding that F.R.R.'s lack of written notice of their whereabouts prevented him, as a practical matter, from visiting his child had he desired to do so.

## V.

We affirm the trial court's order terminating F.R.R.'s parental rights with regard to F.R.R., III and remand the case for further proceedings consistent with this opinion. We tax the costs of this appeal to F.R.R. and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.