CUSTODY OF A MINOR (No. 3). November 5, 1982. There was significant support for the determination of the probate judge that the biological father, who sought custody of a minor child, was not a fit parent. The judge's findings included the following: About a week or two after they were married, the biological parents separated. The father did not see his daughter until she was one and one-half to two years of age. When the parents were divorced, custody was awarded to the mother. About one month thereafter, the child was temporarily placed in the custody of the Department of Public Welfare upon its petition for care and protection because of abuse or neglect of the child. The father has never had custody of the child and has little experience in caring for a child. He lacks the skills necessary for raising a child. On one or two occasions he has denied paternity of the child. Although he has rights to visit his daughter, the father has missed scheduled visits for reasons such as his car being out of gas or for no stated reason at all. The father is immature and has difficulty managing his own affairs. He has had only sporadic employment. His physical living accommodations, which are in an apartment apparently shared with others, are not adequate for raising a child. A room set aside for the child had neither a bed nor a place for the child's clothing. That room was crowded with three television sets which did not work. It was on a second floor where there was no bathroom, and there was no bannister on the stairs leading to that floor from the first. The child was afraid to go down the stairs and wet herself rather than making the trip which so frightened her. The father demonstrated inability to understand, and to accommodate himself to, the child's needs; for example, he lost his temper when asked to defer a visit so that the child could practice

for a ballet recital important to her. Custody of the child has lodged with her maternal aunt, where she has a secure environment and has progressed physically and emotionally.

Procedurally the case arose under a complaint to modify a divorce judgment, thus invoking G. L. c. 208, § 28, which looks to the best interests of the child as the guiding standard for decision of the question of custody. In conclusions of law filed by him, the judge expressed the view that the best interests of the child was the paramount standard by which he was to be guided. In doing so, he overlooked the substantial role played by the Department of Social Services in directing custody away from the natural father and to a maternal aunt. The department had been made a party to the father's action seeking modification of custody because when the complaint was filed, the department had legal custody of the child. Insofar as the proceeding, upon the department's urging, results in taking the child out of the hands of both natural parents, it more resembles a proceeding in which the State seeks to terminate parents' rights to the custody of minor children, as under the care and protection statute (G. L. c. 119, §§ 23-29), the guardianship statute (G. L. c. 201, § 5), or the adoption statute (G. L. c. 210, § 3). See *Custody of a Minor (No. 1)*, 377 Mass. 876, 877 (1979); *Bezio* v. *Patenaude*, 381 Mass. 563, 570 (1980); *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 589 (1981). Because of the State's part in the case, a part which had its origin in care and protection proceedings, it is necessary that the determination whether her natural father shall be deprived of custody be based on a finding that he is currently not fit to further the welfare and best interests of the child. *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. at 589-590. We recognize that the judge made independent findings of the unfitness of the father. We think, however, the findings must be reassessed for reasons stated below. In doing so it is appropriate to bear in mind that the unfitness standard does not stand entirely apart from the interests of the child; the two criteria are interrelated. Indeed, "the critical question is whether the natural parents are currently fit to further the welfare and best interests of the child." *Bezio* v. *Patenaude, supra* at 576. See also *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption, supra* at 590.

The findings of the probate judge were made shortly before the decision in *Santosky* v. *Kramer*, 455 U.S. 745 (1982). There the Supreme Court held that, if natural parents are to be deprived of the custody of a child, findings of parental unfitness should be made on the basis of clear and convincing evidence. *Id.* at 768-769. Accordingly, we think it appropriate to remand the case to the Probate Court for reassessment by the probate judge. He should consider whether he is prepared to adopt or amplify, on the basis of a standard of clear and convincing evidence, the subsidiary and conclusory findings which he had previously made. Coun-

sel shall be afforded an opportunity to be heard, and the judge should consider expanding the evidence and bringing it up to date. *Custody of a Minor (No. 2),* 13 Mass. App. Ct. 1088 (1982).

*So ordered.*

*Judith Liben* for the father.

*Leah S. Crothers,* Assistant Attorney General, for Department of Social Services.