PETITION OF THE DEPARTMENT OF SOCIAL SERVICES TO
DISPENSE WITH CONSENT TO ADOPTION.

Worcester.   October 19, 1982. — January 18, 1983.

Present: PERRETTA, CUTTER, & KASS, JJ.

*Adoption,* Dispensing with parent's consent.

General Laws c. 210, §§ 1-6, are not unconstitutional although not ex-
   pressly requiring allegations of parental unfitness to be supported by
   clear and convincing evidence, inasmuch as the requisite standard of
   proof is established by judicial decisions. [164]
A Probate Court judge, in proceedings brought by the Department of
   Social Services to dispense with a mother's consent to the adoption of
   her son, was free to determine that the mother was unfit to care for her
   son, even though a Juvenile Court judge in separate proceedings had
   concluded that the Department had failed to show the necessity of
   removing the child's younger brother from his mother. [164-165]
Evidence at a hearing on a petition to dispense with a mother's consent to
   the adoption of her son was sufficient to provide clear and convincing
   proof that the mother was unfit to care for her son. [165]
A Probate Court judge who had made a determination of parental unfit-
   ness in proceedings to dispense with consent to adoption without refer-
   ence to the clear and convincing standard of proof was free to restate
   his conclusion in terms of that standard after reconsideration of the
   original evidence, where there was no suggestion that the circum-
   stances had changed since the original decision in any way which
   would require further taking of testimony. [165]

PETITION filed in the Worcester Division of the Probate
and Family Court Department on January 30, 1980.

The case was heard by *Conlin,* J.

*John S. McCann* for the mother.

*Maureen L. Fox,* Assistant Attorney General (*Bette A.
Winik* with her) for Department of Social Services.

CUTTER, J.   The Department of Social Services (the De-
partment) on January 30, 1980, filed a petition in the Pro-

bate and Family Court to dispense with the consent of or notice to the unmarried natural parents of any subsequent petition for adoption of Gilberto, a minor in the Department's care and custody since August 28, 1978. Gilberto was born on July 4, 1978. The mother herself was born December 5, 1962. The natural father was born in 1943 or 1945.

The probate judge held several hearings on the petition and on June 16, 1981, made extensive findings (in addition to the facts outlined above). In the findings, he stated in detail the facts on which he based his conclusion that the Department's petition should be granted. These findings, which have support in the evidence, are summarized in Appendix A. In general they show the inadequacy of a well-intentioned, immature mother during a considerable period when she was less than or about sixteen years old (and thereafter) to deal with the needs of her son Gilberto.

The judge, on March 20, 1981, appointed Miss Justine Honeyman, a member of the so called CASA (Court Appointed Special Advocate) project of the National Council of Jewish Women, as guardian ad litem. She filed a thorough report, admitted in evidence, which reveals careful investigation. She also testified and was subjected to cross-examination.

The judge concluded that the mother "has not [been], is not, and will not be able [properly] to . . . care for her children." This conclusion obviously was based on all the evidence before him, including the guardian ad litem's report.

The judge also found that the Department has selected (as temporary foster parents and as possible adoptive parents) a couple, Mr. and Mrs. K, respectively thirty-two and twenty-eight years old, who have one child. They live in a suburban neighborhood. The husband is a high-school graduate, soon to receive his bachelor's degree, and is employed by a well-known company as a computer specialist. The judge concluded that it is for the best interest of Gilberto that he be placed for adoption with Mr. and Mrs. K.

A decree was entered on June 16, 1981, that the consent of Gilberto's natural parents need not be obtained for any subsequent adoption approved by the Department. The mother has appealed. A single justice of this court, on June 28, 1982, granted leave to enter the appeal late but "suggested that the Department" seek from the trial judge "a supplemental finding concerning the effect, if any, on his findings, if it should be determined that the applicable standard of proof is 'clear and convincing evidence.'" See *Santosky* v. *Kramer*, 455 U.S. 745 (1982). See also *Custody of a Minor (No. 2)*, 13 Mass. App. Ct. 1088 (1982); *Custody of a Minor (No. 3)*, 14 Mass. App. Ct. 1013, 1014-1015 (1982).

The same probate judge conferred with counsel on July 21, 1982. He then received from new counsel for the mother a copy of a decision of a judge, sitting in the Worcester Division of the Juvenile Court Department, granting the mother's request that she be awarded the custody and care of Angel, Jr., Gilberto's younger brother. The Juvenile Court judge had concluded that the Department had "not persuasively shown the necessity of removing . . . [Angel, Jr.] from his mother" or "an ongoing pattern of parental neglect or misconduct" by the mother, but "rather [that the mother had] an immature and dependent personality."[1]

A motion by the mother for a new trial in the present case was "dismissed" on July 26, 1982. On July 26, the probate judge made rulings, among others, that on the evidence at trial it was "clear and convincing" (1) that the mother was "currently unfit to assume parental responsibility" for Gilberto; (2) that his best interests would be "served by termination of parental rights"; (3) that the Department's plan for Gilberto's adoption will serve his best interests; and (4) that under the "standard of clear and convincing evidence"

---

[1] This decision has been included in the present record although the transcript of the July 21 hearing does not show clearly that it was received in evidence.

mentioned in the *Santosky* case, *supra*, the decision of this case (based on the facts found by the judge after the earlier 1980 and 1981 hearings) "would not be changed." The supplemental findings of fact were expressed in essentially similar terms. Four matters are argued to us on appeal.

1. General Laws c. 210, §§ 1-6, are not unconstitutional although these sections do not in terms require the Department to support its allegations of parental unfitness by clear and convincing evidence. The *Santosky* case itself, at 749 n.3, recognizes that the standard of proof in many States has been established by judicial decision. Massachusetts, prior to the *Santosky* case, had not adopted in such cases the standard of "clear and convincing" proof but, nevertheless, had recognized that what the proper standard was, in effect was a matter for judicial determination. See e.g., *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 592-593 (1981). Now that the *Santosky* case shows that a higher standard of proof is a matter of constitutional necessity, it is open to this court to treat the trial judge's reappraisal of the evidence (on which he first acted in 1981) as satisfying the new requirements of "clear and convincing evidence." See *Petition of the Department of Social Services to Dispense with Consent to Adoption, post* 916 (1983).

2. A court must find that natural parents are unfit before cutting off their parental rights. See *Adoption of a Minor*, 386 Mass. 741, 747 (1982), and case cited. It is not necessary to show that a parent is guilty of physical abuse or great neglect in order to prove unfitness. Unfitness is not based solely on a parent's affirmative conduct but partakes of an assessment of the parent's "character, temperament, capacity, and conduct, and . . . the welfare of the child in connection with its age, environment and affections." *Petition of the Dept. of Pub. Welfare*, 383 Mass. at 589, quoting *Richards* v. *Forrest*, 278 Mass. 547, 554 (1932). *Custody of a Minor*, 383 Mass. 595, 600-602 (1981). See *Petition of the New England Home for Little Wanderers*, 367 Mass. 631, 636 (1975); *Bezio* v. *Patenaude*, 381 Mass. 563, 574-576

(1980).  On this basis the probate judge's conclusion is well supported.

This different conclusion reached by the judge of the Juvenile Court is not before us.  We have not seen the whole record upon which he acted and have no occasion to consider whether it had support in the evidence presented to him.  In any event, the case before us relates to Gilberto and not to Angel, Jr. "It is conceivable that . . . parents might be fit to bring up one child and unfit to bring up another." See *Richards* v. *Forrest,* 278 Mass. at 553-554; *Petition of the Dept. of Pub. Welfare,* 383 Mass. at 589.

3.  The evidence at the 1981 hearings appears to us to provide clear and convincing proof that the mother was unfit to provide Gilberto with the care, affection, nurture, and understanding guidance which he requires and to protect him from normal hazards.  Evidence of her serious inadequacy, despite her good intentions, came from competent observers and from the guardian ad litem's report.  It was open to the trial judge, after reconsideration of that evidence, to restate his conclusion in terms of "clear and convincing evidence."  There is no reason to doubt that he honestly and reasonably was of opinion that the evidence met that standard at all times and that he had been satisfied with the evidence in accordance with that standard.  At the conference on supplemental findings on July 21, 1982, no offer of proof by counsel was made, nor was there any affidavit, that the circumstances had changed since the original 1981 decision in any manner which would require further taking of testimony.

4.  We perceive no abuse of discretion in the trial judge's denial of a new trial.

The decree of June 16, 1981, as supplemented and explained by the trial judge's rulings and findings of July 26, 1982, is affirmed.  The order denying the motion for a new trial also is affirmed.

*So ordered.*

APPENDIX.

*Summary of the Trial Judge's Original Findings of June 16, 1981.*

(Material within quotation marks is quoted from the judge's findings and does not purport to be quoted from the evidence.)

1. The relationship between Gilberto's mother and his father "has been . . . volatile . . . over the years." The mother fears the father who has physically assaulted her, but "has been unable to terminate this relationship." The couple have refused counseling, and the mother has refused or failed to follow diligently certain other references to social institutions and counsellors designed to assist her to become a suitable parent.

2. Gilberto was injured about the head when he was seven weeks old. Although there is no evidence that the mother ever struck Gilberto, she has given "several explanations as to what caused the injury" including one that the father "hit the baby."

3. The mother, who "became angry when the baby became fussy or cried," voluntarily took Gilberto to a health center on August 21, 1978. Since then he has been under the Department's care and has lived in foster homes. He was committed to the Department's permanent care on August 29, 1979. See G. L. c. 119, § 24. The mother had a second child, Angel, Jr., born May 20, 1980.

4. The mother has been seen by a child psychologist who indicated that the mother "suffered from a character disorder with a limited potential for mothering [*sic*] Gilberto" and the psychologist "did not feel that . . . [the mother] could really be a potential mother for her children." A case worker, formerly assigned to the mother's case, observed the mother with Gilberto having "difficulty feeding the baby, putting the baby to sleep, dressing the baby, and taking his temperature," and as "of January 28, 1980 . . . [the mother] did not have basic ability to care for Gilberto." Her present social worker made efforts to obtain various forms of counselling help for the mother (and in at least one instance for the father), but the arrangements were not used in any satisfactory fashion.

5. A child psychiatrist saw the mother on at least three occasions, once with Gilberto. With his mother, Gilberto "was constricted and controlled" and "wanted to leave the room." He also "cried and yelled" although, when the psychiatrist saw Gilberto apart from his mother, he "was usually outgoing and vivacious." The psychiatrist "found that . . . [the mother] functions like a five year old child herself" and "doesn't think of her children first, although her intentions are good." The mother "never really grew up," and her "potential for taking responsibility for her child's safety is minimal."

6. In April, 1981, the mother was referred [by her then attorney] to Dr. Irwin Goldstein, a psychiatrist. Prior to June, 1981, she had seen him for eight fifty-minute sessions. He found she had an "immature personal-

ity" and said she needed at least one year of psychotherapy and perhaps as much as five years, with no certainty that the situation would improve.

7. Obviously taking into account the guardian ad litem's report, the judge found that the mother "does not provide minimal physical or emotional care necessary for the well being of the children"; that she is "emotionally immature," lacks the "capacity to judge the needs of her children," "has little empathy for them," and needs "constant reminding to change . . . diapers and offer her children food."

[In the trial judge's findings, he refers on a number of occasions to the mother's "children." This is wholly understandable as there was substantial evidence before him concerning Angel, Jr., although only Gilberto was involved in this proceeding.]

8. With the prospective adopting parents, now serving as foster parents, Gilberto's speech has become clearer, he is well behaved, and "is a happy normal child. If he has to visit his mother, he becomes hysterical and nearly uncontrollable. He experiences depression, has nightmares for several days, and diarrhea after visiting his mother."